SEALED

McGREGOR W. SCOTT
United States Attorney
BRIAN A. FOGERTY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

FILED
AUG 0 8 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO § 2703(d) INTERNET PROTOCOL ADDRESSES IDENTIFIED BY IN ATTACHMENT A | CASE NO. 2:18-SW 650 DB<br><br>APPLICATION<br><br>**UNDER SEAL** |

### I.     APPLICATION

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Sprint Corp., an Internet service provider located in Overland Park, Kansas, to disclose certain records and other information pertaining to the INTERNET PROTOCOL ADDRESSES identified in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

### II.     LEGAL BACKGROUND

1.     Sprint Corp. is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require Sprint Corp. to disclose the

items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2); 18 U.S.C. § 2703(c)(1).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

### III. RELEVANT FACTS

4. The United States government, in conjunction with the California Department of Justice and Federal Bureau of Investigation, is investigating a Sacramento-based gang known as **"CashGang Carter."** The investigation concerns possible violations of, *inter alia*, 18 U.S.C. § 1591 – sex trafficking of children or by force, fraud or coercion, 18 U.S.C. § 1952(a)(3) – interstate and foreign travel or transportation in aid of racketeering enterprises, and 18 U.S.C. § 2422(a) – coercion and enticement.

5. The following facts were provided to me by a California Department of Justice special agent:

**A.   Members of CashGang Carter engage in sex trafficking throughout California.**

6. The subjects of this investigation are a group of brothers and associates who are suspected of managing and promoting prostitution throughout the State of California, including the Sacramento area:

    a.    Carlton Carter (also known as "CashGang Tmoe Carter")

    b.    Chermaine Carter (also known as "Del" and "Doeski")

    c.    Jaquorey Carter (also known as "Corey")

   d. Romaine Carter (also known as "Romeo" and "Rome")

   e. Terrence Carter (also known as "CashGang T Carter")

   f. Keshaun Hattley (also known as "Keshaun Carter")

7. Carlton, Chermaine, Jaquorey, Romaine, and Terrence Carter are biological brothers.

8. Since at least 2013, investigations conducted by the FBI, Sacramento County Sheriff's Department, Sacramento Police Department, and other law enforcement agencies have revealed instances in which certain members of the Cashgang Carter gang and their associates have, *inter alia*, recruited, harbored, transported, and maintained minors and adults, causing them to engage in prostitution. These investigations have further revealed that at times, members of the Cashgang Carter organization engage in acts of violence, assist one another, and jointly traffic victims.

## 2016 Sacramento Police Department report linking Chermaine Carter and Jaquorey Carter to sex trafficking.

9. In March 2016, Sacramento Police Department detectives serving as members of an FBI task force received a report that a minor female was being trafficked by Jaquorey Carter. Included in that report was information identifying the female's phone number.

10. An undercover member of the task force arranged a prostitution date with the female. Members of the task force surveilled the parking lot of the hotel where the undercover task force officer and the female agreed to meet. The surveillance agent notice a blue vehicle leave the parking lot before the undercover task force officer arrived. The undercover task force officer then contacted the minor female in the hotel room. Agents learned that the room was rented by Terri Lanzy.

11. Agents observed the blue vehicle return to the parking lot. In the vehicle they found Lanzy and a minor female who had an active arrest warrant. The minor female in Lanzy's car had the word "Doeski" tattooed on her hand. Doeski is a known alias for Chermaine Carter.

12. Both of the minor females identified during this episode were arrested and booked into Sacramento County Jail. Law enforcement officers monitored the jail telephone calls of the minor female who was recovered from the hotel room. The minor female made phone calls to Jaquorey Carter. Law enforcement officers reviewing those calls identified statements that indicated that Jaquorey Carter was engaged in sex trafficking that female.

**2016 Los Angeles Police Department report linking Chermaine Carter, Jaquorey Carter, and Keshaun Hattley to prostitution.**

13. In March 2016, police officers assigned to the Los Angeles Police Department's vice unit observed Jaquorey Carter and Keshaun Hattley enter a vehicle in the parking lot of a hotel. The officers then observed two Hispanic men walk into the parking lot area and enter hotel room 226. A third Hispanic man then entered the same room.

14. Approximately five minutes later, officers observed Jaquorey Carter and Keshaun Hattley exit their vehicle. Chermaine Carter subsequently exited the same vehicle. All three men walked to room 226. Officers then heard people arguing about money in room 226. At the same time, officer received a radio call reporting an armed robbery at the hotel. The radio call indicated that the perpetrator was a black man with a gun in his waistband.

15. Officers next observed Jaquorey Carter, Chermaine Carter, and Keshaun Hattley walk down the stairs of the hotel and toward their car. The officers observed the men continue to argue with the Hispanic men who had been inside room 226. Officers stopped Chermaine Carter and Keshaun Hattley in the parking lot. The officers stopped Jaquorey Carter as he tried to leave in the vehicle. Officers found a loaded 9 millimeter handgun in the center console of the vehicle.

16. In statements provided by the three Hispanic men, they indicated that they were visiting women who were engaging in prostitution in room 226. The men indicated that they gave the women $120 in exchange for unidentified sex acts. After the women did not perform the sex acts that they requested, the men told the women that they wanted their money back. The men observed the women text and call someone. Shortly thereafter, Chermaine Carter, Jaquorey Carter, and Keshaun Hattley opened the hotel room door and told the men to come outside, while motioning as if they had guns. The men then called 911. Chermaine Carter, Jaquorey Carter, and Keshaun Hattley continued to tell the men to come outside, and they also told the men that they were from Oakland and continued to motion as if they had guns.

17. According to reports, police arrested Chermaine Carter, Jaquorey Carter, and Keshaun Hattley, and two of the women from the hotel room, for robbery. The Los Angeles County District Attorney's Office did not pursue charges against these individuals.

### Carlton Carter and Jaquorey Carter discussed prostitution in a July 2017 jail call.

18. In 2017, Carlton Carter was incarcerated at a Sacramento County correctional facility. Inmate Calling Solutions (ICS) is the inmate phone system at the Sacramento County correctional facilities. Agents reviewed a recorded call that Carlton Carter made to telephone number (701) 559-7485 (x7485) using the ICS system in July 2017. Through searches of Facebook.com, agents have linked x7485 to Jaquorey Carter. In the call, Carlton Carter asked "Where the bitches at, man?" Jaquorey Carter indicated that he has somebody right now, a "girl named Brittany." Jaquorey Carter then said he "actually has two bitches." Jaquorey Carter stated a "white girl named Ashley [and] the girl named Brittany." Jaquorey Carter further stated that Ashley is a "go-er."

19. Agents conducted an open source check of x7485 and found that as of August 2017, the number was listed in a companionreviews.com suspected prostitution advertisement for a white female named "Salaam" in San Jose, California. Another open source search linked the number to a suspected prostitution advertisement on myescortsreviews.com for a different female in the Santa Cruz and Watsonville areas of California. Further investigation indicates that Jaquorey Carter may no longer be using this number.

**B.   Agents linked Jaquorey Carter to two telephone numbers and sex trafficking.**

20. In April 2018, Carlton Carter made a telephone call to Chermaine Carter from a Sacramento County correctional facility. Carlton Carter was then an inmate at the correctional facility and his calls were recorded. Law enforcement agents reviewed the call and determined that during the call, Chermaine Carter passed the telephone to a person who identified himself as "Corey." Corey is a known alias for Jaquorey Carter.

21. The subsequent conversation between Carlton Carter and Jaquorey Carter related to prostitution activity. Carlton Carter asked Jaquorey Carter "what's poppin" since "all that." The conversation occurred shortly after Backpage.com was taken offline. Jaquorey Carter answered several times with the word "feet." Contextually, this refers to prostitutes walking a "stroll," or an area known for prostitution activity, instead of advertising and connecting with prostitution customers online. Jaquorey Carter also indicated that he had two girls in San Francisco.

### 2.    Jaquorey Carter used telephone number (916) 370-4851.

22.    In May 2018, Chermaine Carter was arrested by the Sacramento Police Department. At the time of his arrest, a police officer allowed Chermaine Carter to use the officer's phone to call a person who Chermaine Carter identified as his girlfriend. During that call, the officer heard the person identified as Chermaine Carter's girlfriend give Chermaine "Corey's" telephone number. The number that she provided and identified as "Corey's" was (916) 370-4851 (x4851).[1]

23.    Law enforcement agents obtained and reviewed AT&T toll records for the x4851 account. Law enforcement agents also used online tools to search online prostitution forums for advertisements containing telephone numbers listed in the x4851 toll records. By reviewing the toll records and searching suspected prostitution advertisements, agents determined that since January 1, 2018, x4851 was used to make or receive calls and/or communicate via text message with 7 telephone numbers that have appeared in suspected online prostitution advertisements.

24.    The AT&T records for the x4851 account indicate that the account is assigned to Kristine Denrow. Denrow is a known associate of the CashGang Carter members. It is common for individuals who are involved in criminal activity to use others to establish phone accounts in order to avoid law enforcement detection.

### 3.    Jaquorey Carter used telephone number (916) 680-0751.

25.    Law enforcement agents obtained Sprint Corp. subscriber information for the telephone number (916) 680-0751 (x0751).[2] Sprint Corp. records indicate that the x0751 account is assigned to Jaquorey Carter.

26.    On June 6, 2018, law enforcement agents conducted surveillance of Jaquorey Carter. During that surveillance operation, an agent called x0751. A male answered the phone and had a short conversation with the agent. At the same time, another law enforcement agent observed Jaquorey Carter answer his cell phone and participate in a short conversation.

---

[1] On June 7, 2018, the United States obtained a pen-trap order for telephone number (916) 370-4851. *See* case number 2:18-SW-494-EFB.

[2] On June 13, 2018, the United States obtained a pen-trap order for telephone number (916) 680-0751. *See* case number 2:18-SW-508-EFB.

APPLICATION                                           6

**4.     Agents observed Jaquorey Carter in areas known for prostitution activity.**

27.     Also on June 6, 2018, agents observed Jaquorey Carter drive to the area near Stockton Boulevard and Florin Road in Sacramento. This area is known for prostitution activity. Jaquorey Carter parked in a parking lot and did not enter any businesses. While parked in the parking lot, at least three females contacted Jaquorey Carter either at or in his vehicle and then walked toward the area of Stockton Boulevard that is known as a prostitution stroll.

28.     Agents observed Jaquorey Carter also drive to the area near Stockton Boulevard and Fowler Avenue in Sacramento. He parked in the parking lot of a liquor store. After entering the store and returning to his car, Jaquorey Carter sat in the driver's seat of his vehicle with his door open, appearing to monitor the intersection of Stockton Boulevard and Fowler Avenue, which is an area known for prostitution activity. While in the parking lot, two provocatively dressed females got into the backseat of Jaquorey Carter's car. As he and the two females left the parking lot, agents also observed an unidentified male in the front passenger seat.

**C.     Jaquorey Carter's Facebook account contains references to prostitution activity.**

29.     In July 2018, agents identified Jaquorey Carter's Facebook account by reviewing portions of the publicly available content that contained, among other things, photos and videos depicting Jaquorey Carter. The Facebook account ID is "Jaquorey Carter" and the Facebook Friend ID associated with this account is "jaquorey.carter.77," with an ID number of 100022979134843.

30.     Jaquorey Carter is Facebook "friends" with an undercover law enforcement Facebook account. As a "friend," it is possible to see when Jaquorey Carter is available on the Facebook Messenger application. Law enforcement agents have determined that Jaquorey Carter is often active or available on the Facebook Messenger Application.

31.     The following Facebook post in Jaquorey Carter's account, which is dated July 10, 2018, includes a conversation between Jaquorey Carter and what appears to be a female Facebook user. The post includes a reference to Jaquorey Carter's role as a pimp:



[the remainder of this page is blank]

32. The following Facebook post on Jaquorey Carter's account, which is dated June 17, 2018, includes suspected prostitution prices:



D. **Jaquorey Carter's Facebook account was accessed from the IP addresses identified in Attachment A.**

33. On August 2, 2018, the Court entered a pen-trap order for Jaquorey Carter's Facebook account. *See* case number 2:18-SW-618-DB. Pursuant to that order, Facebook has produced a list of IP addresses from which Jaquorey Carter's Facebook account was accessed. The INTERNET PROTOCOL ADDRESSES identified in Attachment A are a subset of those IP addresses.

34. The records requested would identify the subscriber of the INTERNET PROTOCOL ADDRESSES and help identify the person(s) who, and devices that, accessed Jaquorey Carter's Facebook account during the relevant time period.

## IV. GOVERNMENT REQUESTS

35. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, this information will help the United States identify the subscriber, and the associates of that subscriber, who are linked to sex trafficking and related

offenses. Accordingly, the United States requests that Sprint Corp. be directed to produce all items described in Part II of Attachment A to the proposed Order.

36. The United States further requests that the Order require Sprint Corp. not to notify any person, including the subscribers or customers of the account listed in Part I of Attachment A, of the existence of the Order for 180 days from the date of the Court's Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation, aspects of which are neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. As set forth above, the INTERNET PROTOCOL ADDRESSES are linked to a subject of the investigation regarding sex trafficking of children or by force, fraud, or coercion, and other offenses. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

[the remainder of this page is blank]

37. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation, aspects of which are neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 7, 2018

McGREGOR W. SCOTT
United States Attorney

By: /s/ Brian A. Fogerty
BRIAN A. FOGERTY
Assistant United States Attorney